1    Patrick T. Michael (SBN 169745)
     pmichael@jonesday.com
2    JONES DAY
     555 California Street, 26th Floor
3    San Francisco, CA  94104
     Telephone:     (415) 626-3939
4    Facsimile:     (415) 875-5700

5    David L. Witcoff    (IL Bar No. 6183629)
     (admitted pro hac vice)
6    dlwitcoff@jonesday.com
     Timothy J. Heverin (IL Bar No. 6243107)
7    (admitted pro hac vice)
     tjheverin@jonesday.com
8    Thomas W. Ritchie (IL Bar No. 6301954)
     (admitted pro hac vice)
9    twritchie@jonesday.com
     JONES DAY
10   77 W. Wacker Dr., Ste. 3500
     Chicago, IL  60601-1692
11   Telephone:     (312) 782-3939
     Facsimile:     (312) 782-8585
12   Attorneys for Defendant,
     FREESCALE SEMICONDUCTOR, INC.

13

                    UNITED STATES DISTRICT COURT
14
                  NORTHERN DISTRICT OF CALIFORNIA
15
                      SAN FRANCISCO DIVISION
16

17
     CSR TECHNOLOGY INC.,              Case No. 12-CV-02619 RS
18
                    Plaintiff,         **FREESCALE'S MOTION TO**
19                                     **COMPEL PATENT L.R. 3-1**
          v.                           **DISCLOSURES; MEMORANDUM**
20                                     **OF POINTS AND AUTHORITIES IN**
     FREESCALE SEMICONDUCTOR, INC.,    **SUPPORT THEREOF;**
21                                     **DECLARATION OF THOMAS W.**
                    Defendant.         **RITCHIE**
22
                                       Date: January 31, 2013
23                                     Time: 1:30 p.m.
                                       Place: Courtroom 3, 17th Floor
24                                     Judge: Honorable Richard Seeborg

25

26

27

28

FREESCALE'S MOTION TO COMPEL                              12-CV-02619 RS
PATENT L.R. 3-1 DISCLOSURES

1

**TABLE OF CONTENTS**

2

**Page**

3    I.     INTRODUCTION .................................................................................................... 2

4    II.    ISSUES PRESENTED ............................................................................................ 3

     III.   FACTUAL BACKGROUND ................................................................................. 3

5           A.     The Parties ................................................................................................... 3

6           B.     CSR Files Suit Alleging Infringement Of Five Patents ............................. 3

7           C.     The Asserted Patents .................................................................................... 4

            D.     CSR serves Deficient Infringement Contentions And The Parties Meet And
8                  Confer .......................................................................................................... 5

9    IV.    ARGUMENT AND AUTHORITIES .................................................................... 6

10          A.     Infringement Contentions Must Specifically Disclose The Plaintiff's
                   Infringement Theories ................................................................................. 6

11          B.     CSR Improperly Alleges Direct Infringement Of The '827 Patent Entirely
                   "On Information And Belief" And Without The Requisite Specificity ......... 7

12          C.     CSR Fails To Disclose How Each Claim Limitation Of The '886 Patent Is
                   Met By The Accused Products And Instead Presumes Direct Infringement
13                 Based On Unsupported Assertions That Limitations Are Well-Known ............... 10

14          D.     CSR's Contentions Regarding Direct Infringement Of The
                   '590/591 Patents Fail To Satisfy Patent L.R. 3-1(C) Because They Merely
15                 Assume Infringement Based On Alleged Compliance With The Serial ATA
                   Standard ...................................................................................................... 12

16   V.     CSR'S CONTENTIONS REGARDING INDIRECT INFRINGEMENT OF THE
            '827 AND '886 PATENTS FAIL TO SATISFY PATENT L.R. 3-1(D) ......... 14

17   VI.    CSR'S CONTENTIONS REGARDING INFRINGEMENT OF THE ASSERTED
            PATENTS UNDER THE DOCTRINE OF EQUIVALENTS FAIL TO SATISFY
18          PATENT L.R. 3-1(E) ........................................................................................... 15

19   VII.   CONCLUSION ..................................................................................................... 16

20

21

22

23

24

25

26

27

28

1

2

3

## TABLE OF AUTHORITIES

4

**Page**

5

CASES

6

*Bender v. Freescale Semiconductor, Inc.*,
   2010 WL 1689465 (N.D. Cal. Apr. 26, 2010) ........................................................................ 12

7

*Bender v. Maxim Integrated Prods.*,
8   No. C 09-01152 SI, 2010 WL 1135762 (N.D. Cal. Mar. 22, 2010) .......................... 12, 13, 14

9

*Cal. Institute of Computer Assisted Surgery, Inc. v. Med-Surgical Servs., Inc. et al.*,
   No. 10-05067 CW (NC), 2011 U.S. Dist. LEXIS 154627 (N.D. Cal. Sept. 1, 2011)............. 14

10

*Creagri, Inc. v. Pinnaclife Inc., LLC*,
11   2012 WL 5389775 (N.D. Cal. Nov. 2, 2012)............................................................. 14, 15, 16

12

*Elan Microelectronics Corp. v. Apple, Inc.*,
13   No. 09-01531, 2009 WL 2972374 (N.D. Cal. Sept. 14, 2009) (Seeborg, J.)......................... 10

14

*Network Caching Tech., LLC v. Novell, Inc.*,
   No. C-01-2079 VRW, 2003 WL 21699799 (N.D. Cal. Mar. 21, 2003) (Walker, J) ............... 7

15

*Optimumpath, LLC v. Belkin Int'l, Inc. et al.*,
16   2011 U.S. Dist. LEXIS 41634 (N.D. Cal. Apr. 12, 2011) ................................................. 15, 16

17

*Shared Memory Graphics, LLC v. Apple, Inc.*,
18   812 F. Supp. 2d 1022 (N.D. Cal. 2010) ........................................................................... 6, 10

19

*Theranos, Inc. v. Fuisz Pharma LLC*,
   No. 11-05236, 2012 WL 6000798 (N.D. Cal. Nov. 30, 2012) ...................................... 7, 9, 10

20

21

22

23

24

25

26

27

28

1

**<u>NOTICE OF MOTION</u>**

2

TO PLAINTIFF HEREIN AND ITS ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT on January 31, 2013 at 1:30 p.m. before the Honorable

4

Richard Seeborg, or as soon thereafter as the matter may be heard in the above-entitled Court,

5

located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant <u>FREESCALE</u>

6

<u>SEMICONDUCTOR, INC</u>. ("Freescale") will, and hereby does, move for an order compelling

7

Plaintiff CSR Technology Inc. ("CSR") to serve infringement contentions that comply with

8

Patent Local Rule 3-1.

9

Pursuant to Federal Rule of Civil Procedure 37(a)(1) and Civil Local Rule 37-1(a),

10

Freescale hereby certifies that it has met and conferred with CSR in a good faith attempt to obtain

11

compliant infringement contentions before bringing this motion before the Court. Freescale's

12

efforts to resolve this dispute without court intervention are described in the Declaration of

13

Thomas W. Ritchie and exhibits attached thereto, submitted concurrently herewith.

14

Freescale requests an order compelling CSR to amend its infringement contentions to

15

comply with (1) Patent L.R. 3-1(c)'s disclosure requirements regarding CSR's contentions that

16

Freescale directly infringes each of the asserted '827, '886, '590 and '591 patents; (2) Patent

17

L.R. 3-1(d)'s disclosure requirements regarding CSR's contentions that Freescale indirectly

18

infringes the '827 and '886 patents; and (3) Patent L.R. 3-1(e)'s disclosure requirements

19

regarding CSR's contentions that Freescale infringes the '827, '886, '590 and '591 patent under

20

the doctrine of equivalents.

21

This Motion is based on this Notice of Motion and Motion, Memorandum of Points and

22

Authorities attached hereto, the supporting Declaration of Thomas W. Ritchie, the pleadings and

23

papers on file with the Court in this action and such other materials and arguments as may be

24

presented to the Court at the time of the hearing, and all matters of which the Court may take

25

judicial notice.

26

27

28

FREESCALE'S MOTION TO COMPEL
PATENT L.R. 3-1 DISCLOSURES

12-CV-02619 RS

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.    INTRODUCTION**

3   Courts in this District agree that a plaintiff's infringement contentions must provide

4   reasonable notice to the defendant as to why the plaintiff believes it has a reasonable chance of

5   proving infringement and also must raise a reasonable inference that all accused products

6   infringe.  Plaintiffs are required to serve claim charts that identify "specifically where each

7   limitation of each asserted claim is found within each Accused Instrumentality."  Patent L.R. 3-

8   1(c).  Patent L.R. 3-1(d) and 3-1(e) similarly require specificity regarding allegations of indirect

9   infringement and infringement under the doctrine of equivalents.

10   CSR's infringement contentions fall well short of meeting Patent L.R. 3-1's disclosure

11   requirements for at least three reasons.  First, CSR's contentions regarding direct infringement of

12   the asserted '827, '886, '590 and '591 patents fail to identify where each limitation of each

13   asserted claim is found within each Accused Instrumentality.  For example, CSR's contentions

14   allege direct infringement of the '827 patent not upon any identified structure or functionality in

15   the accused products, but rather upon unsupported guesswork, which CSR labels "information

16   and belief."  CSR's contentions similarly presume direct infringement of the '886 patent based

17   only on according-to-CSR "well-known"—but uncited—properties of WCDMA signal

18   transmission.  CSR's contentions for the '590 and '591 patents likewise fail to identify where

19   several key limitations allegedly can be found in the accused products as required by Patent

20   L.R. 3-1(c).

21   Second, CSR's contentions regarding indirect infringement of the '827 and '886 patents

22   fail to identify what actions taken by customers directly infringe the asserted claims, as required

23   by Patent L.R. 3-1(d).  CSR fails to identify a single claim in either of these two patents that CSR

24   contends Freescale's customers directly infringe, let alone how those customers actually infringe.

25   Third, CSR's contentions regarding the doctrine of equivalents are nothing more than

26   boilerplate assertions of infringement under the doctrine of equivalents and therefore fail to

27   satisfy Patent L.R. 3-1(d)'s disclosure requirements.

28   In view of these substantial deficiencies in CSR's infringement contentions, Freescale

1    respectfully requests that the Court compel CSR to serve infringement contentions that comply

2    with Patent L.R. 3-1 within 45 days of the Court's order on this matter.

3    **II.      ISSUES PRESENTED**

4           1.      Whether CSR's contentions that Freescale directly infringes each of the asserted

5    '827, '886, '590 and '591 patents fail to satisfy Patent L.R. 3-1(c)'s disclosure requirements.

6
            2.      Whether CSR's contentions that Freescale indirectly infringes the '827 and
7
     '886 patents fail to satisfy Patent L.R. 3-1(d)'s disclosure requirements.
8

9           3.      Whether CSR's contentions that Freescale infringes the '827, '886, '590 and '591

10   patents under the doctrine of equivalents fail to satisfy Patent L.R. 3-1(e)'s disclosure

11   requirements.

12   **III.     FACTUAL BACKGROUND**

13          **A.      THE PARTIES**

14          Defendant Freescale Semiconductor, Inc. ("Freescale") is the global leader in embedded

15   processing solutions, combining embedded processors, semiconductor devices, and software, to

16   enable development of smaller, optimized and higher performing products that empower the

17   world around us.  For over 50 years, Freescale has been at the forefront of technological

18   innovation in the semiconductor industry.  From the first "walkie-talkie" and two-way radio to the

19   sensors for life saving airbags, Freescale has developed some of the most world changing

20   inventions.  Freescale has invested more than $800M annually toward research and development.

21          Plaintiff CSR Technology Inc. is an indirect, but wholly-owned subsidiary of UK-based

22   CSR plc (collectively, "CSR"), which incorporated in 1998.  Ex. N at 6, 137 (2011 CSR Annual

23   Report).[1]  CSR only recently moved beyond the design and supply of single technology Bluetooth

24   semiconductor products and software.  *See* Ex. N at 3, 5.  CSR's recent strategies to expand into

25   new markets and to achieve greater customer relevance have focused on "targeted acquisitions"

26   of various technology companies.  *See id.* at 1.

27   _____
           [1] Exhibits A-N to this motion double as the exhibits Attached as Exhibits A-N to the
28   Declaration of Thomas W. Ritchie ("Ritchie Decl."), submitted herewith.  E.g., Exhibit N to the
     Ritchie Decl. is also Exhibit N to this Motion.

1

## B.    CSR FILES SUIT ALLEGING INFRINGEMENT OF FIVE PATENTS

2

        This suit by CSR is the latest lawsuit in ongoing litigation between CSR and Freescale.

3

On May 21, 2012 CSR filed this suit against Freescale alleging direct and indirect infringement of

4

five U.S. patents: Nos. 6,882,827 (the "'827 patent"); 6,933,886 (the "'886 patent); 6,388,590 and

5

6,388,591 (the "'590/591 patents");[2] and 6,757,324 (the "'324 patent").  ECF No. 1.  CSR seeks

6

damages in the form of lost profits and/or reasonable royalty in connection with alleged

7

infringement and also seeks to permanently enjoin Freescale from the alleged practice of these

8

patents.  ECF No. 1 at 11-12.

9

## C.    THE ASSERTED PATENTS

10

        Although CSR originally asserted five patents against Freescale, CSR has since dropped

11

its assertion of the '324, which was subject to a pre-existing license to Freescale.  CSR continues

12

to assert the '827, '886 and '590/591 patents (collectively, "Asserted Patents").  *See* Ex. A at 1

13

(CSR Contentions).  These patents span several technology areas.  The '827 patent is directed

14

toward mechanisms for self-testing a radio transceiver.  Ex. B-1 at Abstract, 3:3:40-4:25 ('827

15

Patent).  In addition to an antenna, local oscillator, transmitter and receiver, the patent's radio

16

transceiver includes a "switching arrangement" that, when set in a testing configuration, allows

17

the transmitter's radio frequency ("RF") output to be fed back to the receiver's RF input.  Ex. B-1

18

at 1:36-2:18 ('827 Patent).  The patent explains that the arrangement enables "self-testing" and

19

measurement of the transceiver RF signals without the need for additional testing equipment.  *See*

20

Ex. B-1 at 3:40-4:21-25.

21

        The '886 patent is directed toward signal acquisition techniques that enable coherent

22

correlation of received signals.  Ex. C-1 at Abstract ('886 Patent).  The patent's claims require

23

functionality for "sampling [the] received signal," "obtaining data bit information," "processing

24

[the] sampled data," "dividing [the] sampled data," and "computing I and Q correlation

25

integrals."  *Id*. at 19:65-20:13, 21:28-22:30.  By obtaining and using bit data information

26

associated with each signal source, the patent claims to provide for coherent correlation of

27

received signals.  *See id*. at 1:9-2:24.

28

        [2] The '590 and '591 patents share a common specification and contain similar claims.

The '590/591 patents share the same specification and generally relate to interfaces for connecting certain storage devices in computers. *See, generally*, Ex. D-1 ('590 Patent); Ex. E-1 ('591 Patent). By way of background, "ATA" is one such interface standard that utilizes a parallel interconnect cable to transfer data between the device and the computer's host controller. ATAPI, which stands for "AT Attachment Packet Interface," is a protocol allowing the ATA parallel interface to carry ATAPI packet commands, which extends the types of devices that can connect to the computer using the ATA parallel interconnect cable. The '590/591 patents describe and each claim different aspects of an alleged transmission interface invention that allows ATAPI protocol packet commands to be sent over a serial, as opposed to parallel, interconnection. *See* Ex. D-1 at 12:4-18 ('590 Patent); Ex. E-1 at 11:49-12:6 ('591 Patent). The '590 patent's invention includes an "ATAPI transmission circuit," a converter, and a "packetizing circuit." *See, e.g.*, Ex. D-1 at 12:4-54. The '591 patent's invention includes "an ATAPI receiver circuit," a converter, and a "depacketizing circuit." *See* Ex. E-1 at 11:49-43. According to the patents, the converters convert parallel signals to serial signals and vice versa. *See id*. The packetizing/depacketizing circuits format signals into or extract signals from "packets" that may form part of a larger message. *See, e.g.*, Ex. D-1 at 20-25; Ex. E-1 at 10-15. The ATAPI receiver/transmission circuits, according to the patents, facilitate the exchange of signals between a computer or device's ATAPI functionality and the converters. *See* Ex. D-1 at Fig. 4, 12:4-18; Ex. E-1 at Fig. 8, 11:49-12:6.

### D.    CSR SERVES DEFICIENT INFRINGEMENT CONTENTIONS AND THE PARTIES MEET AND CONFER

On October 15, 2012, CSR served its infringement contentions alleging that some twenty-seven Freescale products infringed various claims of the Asserted Patents. Ex. A at 1-2 (CSR Contentions). Specifically, CSR contends that certain Freescale transceivers infringe method claim 14 of the '827 patent; that the combination of a Freescale BSC913x-branded Processor (including as integrated into the BSC9131 Reference Design Board), WCDMA/LTE software, and certain Freescale RF modules infringes the '886 patent's signal acquisition claims; and that twenty-four Freescale processors include interfaces that infringe various claims of the

'590/591 patents. *See* Ex. A at 1-2; *see also* Ex. B-2 at 1 ('827 Patent Claim Chart); Ex. C-2 at 1 ('886 Patent Claim Chart); Ex. D-2 at 1 ('590 Patent Claim Chart); Ex. E-2 at 1 ('591 Patent Claim Chart).

On October 30, Freescale notified CSR of the numerous deficiencies in its contentions. Ex. F (Oct. 30 Ritchie Letter); Ritchie Decl.¶ 5.  On November 6, CSR refused to supplement its contentions to address these deficiencies.  Ex. G-1 (Nov. 6 Fuehrer Letter); *see also* Ex. G-2 (Nov. 6 Fuehrer Discovery Letter).  At that time, counsel for Freescale informed CSR that, if necessary, Freescale would seek the Court's assistance in compelling CSR's compliance with the Patent Local Rules.  Ex. H at 2 (Nov. 7 Ritchie Letter).  The parties subsequently agreed to meet and confer on December 10, 2012.  Ex. I (Dec. 7 Fuehrer Email).

During the December 10 meet and confer, counsel for Freescale again raised the numerous issues that are subject of this Motion and Freescale's October 30 letter.  *See* Ritchie Decl. ¶ 8; *see also* Ex. J (Dec. 17 Ritchie Email).  During the conference, counsel for CSR was unprepared to discuss any details of any of the deficiencies Freescale had raised for that past month.  *See id*.  Instead, CSR counsel told Freescale counsel that he would get back to Freescale regarding the infringement contentions dispute.  Ritchie Decl. ¶ 8.  On December 18, CSR again confirmed that it refused to supplement its infringement contentions.  *See* Ex. K-1 (Dec. 18 Fuehrer Email); Ex. K-2 (Dec. 19 Ritchie Email); Ritchie Decl. ¶ 9.  As of the filing of this motion, CSR's contentions remain deficient.

## IV.   ARGUMENT AND AUTHORITIES

### A.   INFRINGEMENT CONTENTIONS MUST SPECIFICALLY DISCLOSE THE PLAINTIFF'S INFRINGEMENT THEORIES

Patent Local Rule 3-1 requires that a plaintiff serve infringement contentions sufficient to (1) provide the defendant reasonable notice as to "why the plaintiff believes it has a reasonable chance of proving infringement"; and (2) "raise a reasonable inference that all accused products infringe."  *Shared Memory Graphics, LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010).  Plaintiffs must also provide a chart "identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality."  *Shared Memory Graphics*,

1  812 F. Supp. 2d at 1024; Patent L.R. 3-1(c).  The information put forth must be "so specific that

2  either reverse engineering or its equivalent is required."  *InterTrust Techs. Corp. v. Microsoft*

3  *Corp*., No. 01-1640 SBA, 2003 WL 23120174, *2 (N.D. Cal. Dec. 1, 2003) (Armstrong, J.)

4  (citations omitted).

5       "Vague and conclusory contentions are inadequate."  *See Theranos, Inc. v. Fuisz Pharma*

6  *LLC*, No. 11-05236, 2012 WL 6000798, *4 (N.D. Cal. Nov. 30, 2012).  Contentions that merely

7  assume the existence of claim limitations, that are "replete with vague discussions of the claim

8  terms," and/or that fail to provide "information to defendants [other] than the claim language

9  itself" simply do not satisfy this standard.  *See Network Caching Tech., LLC v. Novell, Inc.*, No.

10  C-01-2079 VRW, 2003 WL 21699799, *4 (N.D. Cal. Mar. 21, 2003) (Walker, J).

11       CSR's contentions in this case fall well short of meeting Patent L.R. 3-1's disclosure

12  requirements for at least three reasons.  First, CSR's contentions regarding direct infringement of

13  the '827, '886, '590 and '591 patents fail to identify specifically where each limitation of each

14  asserted claim is found within each Accused Instrumentality, as required by Patent L.R. 3-1(c).

15  Instead these contentions merely presume—without support—that asserted functionality exists in

16  Accused Instrumentalities.  Second, CSR's contentions regarding indirect infringement of the

17  '827 and '886 patents fail to identify what actions taken by customers directly infringe the

18  asserted claims, as required by Patent L.R. 3-1(d).  Third, CSR's boilerplate assertions of

19  infringement under the doctrine of equivalents are insufficient to satisfy Patent L.R. 3-1(d).

20  **B.   CSR IMPROPERLY ALLEGES DIRECT INFRINGEMENT OF THE '827 PATENT ENTIRELY "ON INFORMATION AND BELIEF" AND**
21  **WITHOUT THE REQUISITE SPECIFICITY**

22       CSR makes its '827 patent direct infringement contentions without providing the specific

23  factual support required by Patent L.R. 3-1.  Rather, CSR points to general functionality and

24  improperly assumes the existence of each claim limitation in Freescale's products.  CSR styles its

25  assumptions as "[o]n information and belief," but the contentions do not contain the requisite

26  supporting "information" and are nothing more than wishful guesses as to the operation the

27  accused products.  CSR points to no structure in, or functionality of, the accused Freescale

28  products sufficient to put Freescale on notice of CSR's infringement theory or raise a reasonable

FREESCALE'S MOTION TO COMPEL
PATENT L.R. 3-1 DISCLOSURES                - 7 -                    12-CV-02619 RS

1    inference that Freescale infringes.

2         In support of its contentions, CSR points to the fact that one accused product—the

3    MMM7210 transceiver—can perform calibration.  CSR makes the unsupported leap from that

4    fact to the allegation that such calibration is done by the specific method claimed in the 827

5    patent:  a method of testing a radio transceiver by (a) "setting the switching arrangement to the

6    testing configuration"; (b) "applying a testing signal to the transmitter input to cause the

7    transmitter to generate a radio signal frequency test signal"; and "detecting the output signal of

8    the receiver to determine the response of the receiver to the test signal."  *See* Ex. B-1 at 6:35-62

9    ('827 Patent); Ex. B-2 at 9-12, 14-15 ('827 Patent Claim Chart).

10        For example, CSR contends that because that the MMM7210 can perform "various types"

11   of calibration, that the accused products perform testing using a "switching arrangement" set to a

12   "testing configuration":

13           The Accused Instrumentalities feature various types of calibration,
             including *e.g.* IQ auto-calibration … ***On information and belief***,
14           one or more of these types of calibration are implemented by setting
             the switching arrangement to a testing configuration.…

15
             The Accused Instrumentalities feature various types of calibration,
16           including, *e.g.* IQ auto-calibration … ***On information and belief***,
             one or more of these types of calibrations are implemented by
17           setting a switching arrangement to a testing configuration.…

18   Ex. B-2 at 9-12, 14-15.  But CSR does not identify the location of the claimed "switching

19   arrangement" in the MMM7210 transceiver, let alone how any such "switching arrangement" is

20   set to a "testing configuration," as required by the patent claim.  *See id*.  CSR asserts that even if

21   it has not identified a switching arrangement (which it has not), the MMM7210 transceiver

22   satisfies this limitation because it "can be transitioned between normal and testing configurations,"

23   (Ex. B-2 at 13-14); but CSR does not explain how or provide detail to support this allegation.

24        Next, CSR contends that because that the MMM7210 contains a processor that can

25   generate signals, that processor generates test signals to perform calibration of the transmitter

26   and/or receiver:

27           The Accused Instrumentalities include a processor (see red box in
             annotated Figure 1 below) that can generate and apply signals to the
28           transmitter input … ***On information and belief***, the processor in the

FREESCALE'S MOTION TO COMPEL
PATENT L.R. 3-1 DISCLOSURES                    - 8 -                       12-CV-02619 RS

> Accused Instrumentalities generate[s] and appl[ies] a test signal to the transmitter input, for example to perform calibration of the transmitter and/or receiver.

Ex. B-2 at 16. CSR does not describe any test signal or specifically a test signal that "causes the transmitter to generate a radio frequency test signal." Nor does CSR identify any functionality by which the product detects "the output signal of the receiver to determine [a] response of the receiver to [a] test signal."

CSR also contends that because the accused product contains a receiver that generates output signals based on input signals, that the receiver determines some response to the specifically claimed test signal:

> The Accused Instrumentalities include a receiver that generates output signals based upon the signals received by the receiver … *On information and belief*, the processor in the Accused Instrumentalities determines the response of the receiver to the test signal applied to the input.…

Ex. B-2 at 17-18. But, CSR points to no test signal received by a receiver, nor does it point to any receiver response to such a test signal.

Thus, while CSR parrots back the claim limitations throughout its claim chart, CSR does not cite to a single document that describes any implementation of any type of calibration in the MMM7210 transceiver. *See* Ex. B-2 at 1; Ex. L (MMM7210 Transceiver Data Sheet). Moreover, while CSR's contentions as to the MMM7210 transceiver are deficient, CSR *does not cite a single document* in support of its contentions against the accused MMM6000 or MMM7010 transceivers, or against the alleged products designated RFX-250-20, RFX-275-20, RFX-300-20, RDX-275-30 and RFX-300-30, which CSR also accuses.

CSR's decision to plead its '827 patent contentions against the MMM7210 transceiver, without disclosure of facts that would constitute a good reason to believe a claim exists, and against the other accused products without disclosure of any facts at all, flies in the face Patent L.R. 3-1(c) and warrants striking CSR's contentions. *See Theranos*, 2012 WL 6000798, *4-6 (granting motion to strike infringement contentions where "a number of responses consist[ed] of nothing more than conclusions based 'on information and belief' that something exists or occurs"); *InterTrust*, 2003 WL 23120174, *2 ("plaintiff must put forth information so specific

1    that either reverse engineering or its equivalent is required").

2          This Court recently struck contentions provided in a fashion similar to CSR's and has

3    cautioned litigants pleading on information and belief where they have no factual basis for doing

4    so. *See Theranos*, 2012 WL 6000798; *Elan Microelectronics Corp. v. Apple, Inc.*, No. 09-01531,

5    2009 WL 2972374 , *2(N.D. Cal. Sept. 14, 2009) (Seeborg, J.) ("a litigant may [not] avail itself

6    to Rule 11(b)(3) when there are *no* factual circumstances known to it that would constitute a

7    'good reason to believe' a claim exists") (emphasis in original). In *Theranos*, this Court granted

8    the defendant's motion to strike the plaintiff's infringement contentions where a number of the

9    plaintiff's responses consisted of nothing more than "a conclusion based 'on information and

10   belief' that something exists or occurs. *Id*. at *5. Similarly, in *Elan*, this Court dismissed a

11   defendant's patent infringement counter claims made on information and belief, even where the

12   counterclaim named a potentially infringing product. 2009 WL 2972374 , *2 (Seeborg, J.).

13         Moreover, CSR's contentions reflect the type of vague and conclusory contentions that

14   this Court has repeatedly found deficient. While CSR's contentions repeat "calibration"

15   throughout and conclude that each limitation occurs in the context of calibration, CSR cites ***no***

16   ***documents*** describing ***any*** implementation of calibration, testing or of the data paths it alleges

17   practice the asserted claim. Further, while CSR asserts that the MMM6000 and MMM7010

18   transceivers as well as five RF subsystems are "reasonably similar" to the MMM7210 transceiver,

19   CSR does not served a single claim chart or otherwise identified a single document pertaining to

20   these products. *See* Ex. B-2 ('827 Patent Claim Chart). Under these circumstances, CSR should

21   be compelled to amend its contentions to comply with the Patent L.R. 3-1. *See Shared Memory*

22   *Graphics*, 812 F. Supp. 2d at 1026 ("Rather than provide a meaningful description of its theories,

23   SMG's vague contentions and conclusory statements invite Defendants and the Court merely to

24   *assume* the presence of a data distribution bus . . . The Court therefore finds that SMG's

25   disclosure falls short of the level of specificity required by Local Rule 3-1.").

26   **C.    CSR FAILS TO DISCLOSE HOW EACH CLAIM LIMITATION OF THE
           '886 PATENT IS MET BY THE ACCUSED PRODUCTS AND INSTEAD**
27   **PRESUMES DIRECT INFRINGEMENT BASED ON UNSUPPORTED
         ASSERTIONS THAT LIMITATIONS ARE WELL-KNOWN**
28

FREESCALE'S MOTION TO COMPEL
PATENT L.R. 3-1 DISCLOSURES                      - 10 -                              12-CV-02619 RS

CSR's '886 patent contentions characterize the Accused Instrumentalities as "devices that receive WCDMA and LTE signals" and allege that almost every limitation of each asserted claim is found in the combination of Freescale BSC913x Processor and WCDMA/LTE software offered by Freescale.[3]  But CSR does not identify where in this accused software/processor combination it believes each such limitation is found.  For example, CSR's contentions contain no identification of where specifically the "obtaining data bit information" limitation is found and no identification of where the "computing I and Q correlation integrals" limitation is found.  None of the documents CSR cites show where this functionality resides.

Instead of identifying where in the Accused Instrumentalities each limitation of each asserted claim can be found, CSR merely points to high-level marketing documents and asserts that it is "well-known" that one type of signal—*i.e.*, a WCDMA signal—requires the claimed functionality based on its alleged use of the QPSK modulation scheme.  *See, e.*g., Ex. C-2 at 11-13, 17-20 ('886 Patent Claim Chart).  In supposed support of its claim regarding WCDMA signals, CSR identifies an entire chapter of a book that was printed prior to the filing of the '886 patent application.  Ex. C-2 at 11-13, 17-18, 14-46, 50-51, 63-65, 70-71; Ex. M (Ojanperä Chapter).  But CSR does not identify any specific pages in this 36-page chapter.  *See id.*

Despite alleging that WCDMA requirements are well-known, CSR makes no such claim regarding LTE signals.  Moreover, with respect to both technologies, CSR does not once attempt to show where in  the publicly available standards any asserted claim limitation can be found.  *See* Ex. C-2 ('886 Patent Claim Chart).  For example, CSR's contentions make no reference to any document that even purports to explain how the use of WCDMA or LTE signals or the QPSK demodulation scheme would, as CSR contends, require functionality for "obtaining data bit information" and "computing I and Q correlation integrals," as required by the asserted claims.  *See* Ex. C-2.

CSR's contentions for the '886 patent fail to disclose where in the Accused

---

[3] *See* Ex. C-2 ('886 Patent Claim Chart) at 11-13, 42-44, 46, 64-65 (obtaining data bit information); 13-15, 46-48, 66-68 (processing the sampled data); 17-18, 50-51, 70-71 (dividing the sampled data); and 19-20, 52-53, 72-73 (computing I and Q correlation integrals); *see also id.* at 20-24, 26-27, 29-30 (dependent claims 2, 6, 7 and 8).

Instrumentality each limitation of the asserted claims is found.  At the outset, CSR fails to identify a single document concerning the receiving of LTE signals, even though CSR is accusing both alleged WCDMA and LTE devices.  What's more, CSR's contentions lack any identification of where specifically in the accused software/processor combination—or in the details of the WCDMA or LTE standards—any limitation of any asserted claim can be found.  For almost every limitation, CSR merely alleges that the WCDMA/LTE software in combination with the Freescale BSC913x processor meets the limitation, without providing any further explanation.  But nothing in CSR's contentions give any indication of where the asserted limitations are found, and repeating the unsupported assertion that WCDMA signal requirements are "well-known" does not relieve CSR of its duty provide this information.  *Bender v. Maxim Integrated Prods.*, No. C 09-01152 SI, 2010 WL 1135762, *2 (N.D. Cal. Mar. 22, 2010); *Bender v. Freescale Semiconductor, Inc.*, 2010 WL 1689465, *4 (N.D. Cal. Apr. 26, 2010) ("Merely alluding to the fact that any electrical engineer would understand the infringement contentions is not sufficient.  As a result the plaintiff fails to properly map and link the claim language to each accused product; instead, the locations are repeated for each and every claim. … Plaintiff must revise his ICs.").

Put another way, regardless of whether CSR believes certain functionality to be "well-known," its contentions must specify the location of every claim element within the accused products "so that the Court can make a principled decision on whether discovery will proceed." *Bender*, 2010 WL 1135762, *2.  CSR therefore should be compelled to amend its contentions regarding direct infringement of the '886 patent.

**D.    CSR'S CONTENTIONS REGARDING DIRECT INFRINGEMENT OF THE '590/591 PATENTS FAIL TO SATISFY PATENT L.R. 3-1(C) BECAUSE THEY MERELY ASSUME INFRINGEMENT BASED ON ALLEGED COMPLIANCE WITH THE SERIAL ATA STANDARD**

CSR's contentions that certain Freescale processors infringe the '590/591 patents are based solely on CSR's allegation that certain interfaces within these products comply with the Serial ATA ("SATA") standard.  Throughout its contentions, CSR asserts that the Accused Instrumentalities are Freescale processors that include "a serial ATA interface." *See, generally*, Ex. D-2 ('590 Patent Claim Chart); Ex. E-2 ('591 Patent Claim Chart).  In supposed support, CSR

1   points to blocks labeled "SATA" in diagrams for the accused processors and to statements

2   regarding parallel-to-serial data conversion within the SATA physical layer ("PHY").  *See, e.g.*,

3   Ex. D-2 at 3-6 ('590 Patent Claim Chart); Ex. E-2 at 3-6 ('591 Patent Claim Chart).  Other than

4   identifying these generic "SATA" blocks and serial-to-parallel conversion capabilities, CSR does

5   not identify specifically where in the accused products each asserted claim limitation is found.

6   CSR makes no identification of where in the accused products the "ATAPI transmission circuit"

7   limitation required by asserted claims 18 and 20 of the '590 patent allegedly can be found.  Nor

8   does CSR identify where in the accused products the "ATAPI receiver circuit" limitation required

9   by asserted claims 17 and 19 of the '591 patent allegedly can be found.  CSR similarly fails to

10  identify where in the accused products the "packetizing circuit" limitation (of '590 patent claims

11  20 and 26) and the "depacketizing circuit" limitation (of '591 patent claims 19 and 25) allegedly

12  can be found.

13           Instead of identifying where the asserted ATAPI transmission/receiver circuit limitations

14  and the packetizing circuit/depacketizing circuit limitation allegedly are found, CSR merely

15  repeats its reference to parallel-to-serial/serial-to-parallel conversion in the SATA physical layer

16  and then asserts without support that each claim limitation is met.  *See, e.g.*, Ex. D-2 at 10-14, 19-

17  20 ('590 Patent Claim Chart); Ex. E-2 at 14-18, 20-21 ('591 Patent Claim Chart).   CSR

18  references a few pages in a draft section of a version of the SATA standard and also a diagram of

19  the SATA physical layer indicating parallel-to-serial/serial-to-parallel conversion.  *See id*.  But

20  these few documents do not provide any information about where CSR believes the asserted

21  ATAPI transmission circuit, ATAPI receiver circuit, packetizing circuit, and depacketizing circuit

22  limitations are allegedly found in the accused products.

23           Instead of making the disclosures required by Rule 3-1(c), CSR merely presumes that

24  parallel-to-serial/serial-to-parallel conversion functionality and the use of ATAPI packet

25  commands allegedly requires the specific limitations of the data transmission interfaces claimed

26  in the '590/591 patents.  Contentions based on such assumptions, however, fail to satisfy Patent

27  L.R. 3-1(c)'s disclosure requirements.  *Bender*, 2010 WL 1135762, *2 ("While plaintiff's

28  statements may not be untrue, they are based on assumptions … [Therefore plaintiff's amended

infringement contentions] still fall short of 'identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality[]' [as required by] Patent L.R. 3-1(c).").  CSR therefore should be compelled to amend its contentions regarding direct infringement of the '590 and '591 patents.

## V. CSR'S CONTENTIONS REGARDING INDIRECT INFRINGEMENT OF THE '827 AND '886 PATENTS FAIL TO SATISFY PATENT L.R. 3-1(D)

Patent Local Rule 3-1(d) requires that a plaintiff's infringement contentions include "an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement."  Patent L.R. 3-1(d); *Bender*, 2010 WL 1135762, *3.  A plaintiff must disclose "how exactly it believes [the defendant] indirectly or contributorily infringed" the asserted patent or patents.  *Creagri, Inc. v. Pinnaclife Inc., LLC*, 2012 WL 5389775, *5 (N.D. Cal. Nov. 2, 2012);  *Bender*, 2010 WL 1135762, *3.

CSR's contentions fail to satisfy Rule 3-1(d), both for the '827 patent and the '886 patent,[4] as CSR makes no disclosure of how CSR believes Freescale's customers allegedly infringe these patents.  *Bender*, 2010 WL 1135762, *3 (holding infringement contentions deficient where they did "not describe any acts committed by a third party that would suggest direct infringement").  CSR has not even identified, for either of the '827 or the '886 patents, the claims it contends are directly infringed by Freescale's customers.  *See Cal. Institute of Computer Assisted Surgery, Inc. v. Med-Surgical Servs., Inc. et al.*, No. 10-05067 CW (NC), 2011 U.S. Dist. LEXIS 154627, at *8 (N.D. Cal. Sept. 1, 2011)  (recognizing that plaintiff must identify "how Defendant's customers infringed the patents in suit, which claims they infringed, or how Defendants induced that infringement").  Moreover, CSR's assertion that "Freescale's marketing documents" encourage "use" of products accused of infringement the '886 patent, (Ex. A at 2-3 (CSR Contentions)) does not amount to a disclosure of whether or how direct infringement actually occurs.  *See Creagri*, 2012 WL 5389775 (holding that contentions alleging, *inter alia*, that accused infringer "advis[ed] others to use the … the product in an infringing manner" failed to satisfy Patent L.R. 3-1(d)).

---

[4] CSR does not assert indirect infringement of the '590 and '591 patents.

FREESCALE'S MOTION TO COMPEL
PATENT L.R. 3-1 DISCLOSURES

12-CV-02619 RS

1    Thus, CSR should be compelled to amend its contentions regarding indirect infringement

2    of the '827 and '886 patents.

3    **VI.    CSR'S CONTENTIONS REGARDING INFRINGEMENT OF THE ASSERTED
          PATENTS UNDER THE DOCTRINE OF EQUIVALENTS FAIL TO SATISFY**

4    **PATENT L.R. 3-1(E)**

5            Patent L.R. 3-1(e) requires that a plaintiff's infringement contentions include a disclosure

6    of "[w]hether each limitation of each asserted claim is alleged to be literally present or present

7    under the doctrine of equivalents in the Accused Instrumentality."  Patent L.R. 3-1(e).  This Rule

8    is strictly applied by this District's courts.  *Optimumpath, LLC v. Belkin Int'l, Inc. et al.*, 2011

9    U.S. Dist. LEXIS 41634, at *24-25 (N.D. Cal. Apr. 12, 2011).  Boilerplate recitation of doctrine

10   of equivalents language does not satisfy Patent L.R. 3-1(e).  *Id.* at *25 ("[J]udges of this court

11   have rejected plaintiffs' attempts to assert claims under the doctrine of equivalents with blanket

12   statements."); *Creagri*, 2012 WL 5389775, *6 ("[Plaintiff] cannot merely add boilerplate

13   language asserting that the doctrine of equivalents has been met as an alternative theory.  It must

14   specify in what way [defendant's] products infringe under the doctrine of equivalents, or drop the

15   contention altogether[.]").

16           Here, for each of the Asserted Patents, CSR's contentions are nothing more than

17   boilerplate assertions of the doctrine of equivalents.  CSR's contentions for the '827 and '590/591

18   patents each contain the same boilerplate:

19           In addition to literally infringing this claim limitation, the Accused
             Instrumentalities also infringe under the doctrine of equivalents.
20           The above-described functionality is at most insubstantially
             different from the claimed functionality and performs the same
21           function in the same way to achieve the same result.

22   *See* Ex. D-2 at 10, 14, 18, 19, 28, 32, 39, 43 ('590 Patent Claim Chart); Ex. E-2 at 10, 14, 18, 19,

23   29, 32, 36, 40 ('591 Patent Claim Chart); Ex. B-2 at 15-16, 17 and 18 ('827 Patent Claim Chart);

24   *see also* Ex. D-2 at 20, 45, 46 (dependent claims); Ex. E-2 at 21, 41, 43 (dependent claims).  CSR

25   adds some additional functionality language to its '886 patent contentions, but fails to provide any

26   additional detail regarding the equivalent structure in the accused products.  In essence, these

27   contentions are wordier boilerplate.  *See* Ex. C-2 at 13, 16, 18, 20, 39, 41, 46, 49, 51, 53, 61, 63,

28   65, 69, 72, 74 ('886 Patent Claim Chart); *see also id.* at 22, 23, 28, 31 (dependent claims).  For

example, for the limitation requiring "computing I and Q correlation integrals," CSR asserts:

> In addition to literally infringing this claim limitation, each of the Accused Instrumentalities also infringe under the doctrine of equivalents. The above-described functionality is at most insubstantially different from the claimed functionality and performs the same function in the same way to achieve the same result. ***In particular, each of the Accused Instrumentalities performs the same function of computing I and Q correlation integrals to detect the received signal in the same way using I and Q correlation integrals to achieve the same result of detecting the received signal***.

Ex. C-2 at 20 (emphasis supplied).  Notably, CSR does not describe ***how*** or ***where*** the accused product performs the equivalent of computing I and Q correlation integrals.

In each case, CSR contentions are deficient.  *See Optimumpath,* 2011 U.S. Dist. LEXIS 41634, at *24-25 (finding that Rule 3-1(e) is not met by language asserting that "the Accused Instrumentalities all function in the same or substantially similar manner and include the same or substantially similar components"); *Creagri,* 2012 WL 5389775, *5-6 (finding that Rule 3-1(e) is not met by language asserting "[t]o the extent [the infringement claimed] is not literally present with the … product, this element is met under the doctrine of equivalents.") (ellipses in original).

## VII.   <u>CONCLUSION</u>

CSR's contentions fail to satisfy Patent L.R. 3-1's disclosure requirements.  CSR's contentions regarding direct infringement of the '827 and '886 patents merely presume—without support—that asserted functionality exists and therefore fail to satisfy Patent L.R. 3-1(c).  CSR's contentions for the '590/591 patents similarly presume the existence of asserted limitations, without actually specifying where in the accused products the limitations are found.  CSR's contentions regarding indirect infringement and infringement under the doctrine of equivalents similarly fail to provide the specific disclosures required under Patent L.R. 3-1(d) and 3-1(e).  In view of the substantial deficiencies described above, the Court should compel CSR to amend its infringement contentions to comply with Patent L.R. 3-1.

1   Dated: December 21 , 2012                 Respectfully submitted,

2

3                                             By:  _/s/ David L. Witcoff_____

4

5                                             Patrick T. Michael (SBN 169745)
                                              pmichael@jonesday.com
6                                             JONES DAY
                                              555 California Street, 26th Floor
7                                             San Francisco, CA  94104
                                              Telephone:     (415) 626-3939
                                              Facsimile:     (415) 875-5700
8
                                              David L. Witcoff   (IL Bar No. 6183629)
9                                             (admitted pro hac vice)
                                              dlwitcoff@jonesday.com
10                                            Timothy J. Heverin (IL Bar No. 6243107)
                                              (admitted pro hac vice)
11                                            tjheverin@jonesday.com
                                              Thomas W. Ritchie (IL Bar No. 6301954)
12                                            (admitted pro hac vice)
                                              twritchie@jonesday.com
13                                            JONES DAY
                                              77 W. Wacker Dr., Ste. 3500
14                                            Chicago, IL  60601-1692
                                              Telephone:     (312) 782-3939
15                                            Facsimile:     (312) 782-8585

16                                            Attorneys for Defendant
                                              FREESCALE SEMICONDUCTOR, INC.
17

18                      **<u>CERTIFICATE OF SERVICE</u>**

19          The undersigned hereby certifies that on December 21, 2012,  all counsel of record who

20   are deemed to have consented to electronic service are being served with a copy of FREESCALE

21   SEMICONDUCTOR INC.'S MOTION TO COMPEL COMPLIANCE WITH PATENT L.R. 3-1

22   via the Court's CM/ECF system per Local Rule 5-1.

23                                              _/s/ David L. Witcoff_____

24   DLI-6426364v1

25

26

27

28

FREESCALE'S MOTION TO COMPEL                                              12-CV-02619 RS
PATENT L.R. 3-1 DISCLOSURES              - 17 -